United States District Court
Eastern District of Michigan
Southern Division

United States of America,

      Plaintiff,                             Case No. 20-20433

      v.                                   Hon. Paul D. Borman

Samuel Baker,

      Defendant.
_____/

## Sentencing Memorandum of the United States

In the spring and summer of 2020, countless Americans found themselves out of work and reliant on enhanced unemployment insurance (UI) benefits provided by the CARES Act. State workforce agencies were committed to getting people benefits as quickly as possible; Defendant Samuel Baker took advantage of this, filing roughly three dozen claims in the span of weeks, and stealing over $400,000.

Having pleaded guilty to wire fraud and aggravated identity theft, Baker is now scheduled to be sentenced on August 24, 2022. As discussed further below, the government respectfully recommends a total sentence of 60 months in custody, consisting of 36 months on count one, followed by a mandatory consecutive 24 months on count five.

## I.  Factual and Procedural History

The United States adopts the timeline of relevant case events, the description of the charges to which Defendant Baker has pleaded guilty, and the statement of the offense conduct detailed by the Probation Department in the Presentence Investigation Report (PSR) dated July 15, 2022.

## II.  Sentencing Guideline Calculations and Relevant 3553(a) Factors

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered to impose a sentence "sufficient, but not greater than necessary" to promote the objectives of sentencing: Those objectives include the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from additional crimes by the defendant, and provide the defendant with needed training, care, or correctional treatment. To those ends, the Court should consider: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need to provide just punishment and adequate deterrence; (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5)

Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities (nationwide) among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims.

But sentencing starts with the calculation of the Guidelines range in order to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, while avoiding unwarranted sentencing disparities[.]" *United States v. Booker*, 543 U.S. 220, 264 (2005). Indeed, "[s]entencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. . . . The more out-of-range sentences that judges impose, the more disparity there will be." *United States v. Elliot*, 327 F. App'x 540, 549 (6th Cir. 2009).

A. <u>The Sentencing Guidelines</u>

Pursuant to Rule 11, the parties agreed to a number of sentencing enhancements including: a loss between $250,000 and $550,000; more than ten victims; and the production or trafficking of unauthorized or counterfeit access devices (ECF No. 49, PageID.232). The Probation Department agreed with the majority of these enhancements, with the exception of the 2B1.1(b)(11) enhancement for the production or

3

tracking of any unauthorized access device (PSR ¶ 65). Having reviewed the application notes to Guideline 2B1.6, the government agrees with the Probation department's assessment that the questioned enhancement does not apply under these circumstances. Including a 3-point reduction of acceptance of responsibility, this results in a Total Offense Level of 18.

The parties anticipated that Baker would be a criminal history category II, based on one prior conviction and three total criminal history points; however, the Probation Department identified an *additional* conviction from 2011 that scored an additional point, placing him in category III (PSR ¶ 39). The government agrees with this assessment of Baker's criminal history.

Accordingly, there is no dispute that the applicable sentencing guidelines call for a sentence of 33 to 41 months on count one, plus 24 months on count five, for total range of 57 to 65 months in custody.

B.   Section 3553(a) Factors

In this case, the most significant factors are the seriousness of the offense, and the need to deter Baker and others from engaging in fraud and identity theft. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (C).

(1) *Nature and Circumstances of the Offense*

This was a multi-jurisdictional, multi-modal fraud scheme, involving the misuse of numerous individuals' PII to obtain fraudulent UI benefits—roughly three-dozen claims in at least two states. The defendant was also successful in obtaining a fraudulent Economic Injury Disaster Loan (EIDL) for a non-existent business in Nevada. Baker withdrew the majority of the funds in cash from ATMs around metro Detroit. In total, the defendant received approximately $400,000 in pandemic assistance to which he was not entitled.

It's also worth noting that the defendant was so successful in his scheme that he apparently ran out of ideas for things to do with the money, instead hoarding his newfound wealth like a mythical dragon: at the time of his arrest, law enforcement seized $187,000 *in cash*, and numerous high-end watches (a significant portion of the proceeds appears to have been spent on jewelry).

(2) *History and Characteristics of the Defendant*

Baker is now 39 years old. His early childhood appears to have been well-supported, with all his basic needs met, and no history of abuse or neglect. Likewise, the defendant has no physical or mental

health issues. Baker completed high school and went on to attend some college in both Michigan and Georgia before ultimately obtaining a technical certification as a barber. Thereafter, Baker maintained self-employment in his chosen field, purportedly making a few hundred dollars a month; he reports a negative net worth of approximately $56,000. Baker has also worked as a food deliver driver for Door Dash.

Taken together, there's no clear "reason" for the instant fraud other than the fact that this *appeared* to be easy money. The pandemic presented an opportunity, and the defendant took advantage of it. The unfortunate reality is that by repeatedly withdrawing the funds via ATM, Baker both (1) dramatically increased his likelihood of detection, and (2) significantly decreased the utility of the stolen funds; i.e., there's only so much one can do with cash during a global pandemic.

Baker also has two prior fraud-related convictions, undercutting any potential argument that this was aberrant behavior. Baker knew exactly what he was doing here. And while it's equally apparent that he failed to think his scheme through to its logical conclusion, that doesn't undercut the severity of the conduct. This was a deliberate, albeit short-sighted, series of choices for which a guideline sentence is appropriate.

### (3) *Seriousness of the Offense*

As the Court is likely aware, pandemic unemployment insurance fraud is a <u>serious</u> crime, one that is likely to send ripples through the social safety net for years to come.

The funds made available under the CARES Act and other legislation were intended to help those most in need of support, during the height of the pandemic. There was a finite pool of money, and the volume of fraudulent claims (1) decreased the amount of money available for those who were legitimately entitled to the benefits; and (2) bogged down the state unemployment systems generally, causing delays in payment processing.

The Department of Labor has estimated that up to 10% of the $872 billion (i.e., $87 billion) in pandemic unemployment assistance payments were improper, with the majority of those improper payments being the product of fraud. *See* Office of the Inspector General for the U.S. Department of Labor, Semiannual Report to Congress, Vol. 86: April 1, 2021-September 30, 2021, available at: https://www.oig.dol.gov/public/semiannuals/86.pdf (last accessed August 19, 2022).

Baker's conduct is just one of dozens of examples seen in this district, hitting multiple jurisdictions and causing sizeable losses. This factor weighs heavily in favor of a significant sentence.

(4) *Need for Deterrence*

Baker's two prior convictions both resulted in probationary sentences. Neither was sufficient to deter him from engaging in fraud in this case. Whatever sentence the Court imposes should impress upon Baker the significance of his actions here, in hopes of deterring him from similar conduct in the future.

Further, given the overwhelming amount of unemployment insurance fraud that has occurred nationwide (and the increasing prevalence of fraud in southeast Michigan), a lengthy sentence is important to convey to others that fraud has <u>real</u> consequences.

(5) *Promoting Respect for the Law and Providing Just Punishment*

As evidenced by his repeated fraudulent conduct in his case—stealing two different types of government benefits at the height of a global pandemic—Baker appears to have little respect for the law.

In terms of just punishment, the United States believes this case warrants a sentence firmly within the range estimated by the

sentencing guidelines.

C. *Restitution, Fines, and Forfeiture*

The defendant's crimes caused significant financial losses to numerous state unemployment insurance agencies; thus, the United States seeks imposition of a mandatory restitution order under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, in the total amount of $414,454, payable as follows:

| | |
|---|---:|
| State of Michigan Unemployment Insurance Agency | $42,640 |
| State of Pennsylvania Unemployment Insurance Agency | $324,814 |
| Small Business Administration | $47,000 |

In addition to ordering restitution, the government asks the Court to adopt the special conditions suggested by the Probation Department in ¶ 88 of the PSR, require the defendant to pay a $200 special assessment, and impose forfeiture consistent with the parties' Rule 11 Plea Agreement.

The government would also ask the Court to order forfeiture consistent with the parties' Plea Agreement, and the Preliminary Order of Forfeiture that the government intends to file in advance of sentencing.

### III. Conclusion

For all these reasons, the United States recommends a sentence of imprisonment of 36 months for count one, followed by the mandatory 24-month sentence for the aggravated identity theft charge in count five. The United States also recommends term of supervised release of three years on count one, and one year on count five.

The government also asks for a mandatory order of restitution in the total amount of $414,454, as well as forfeiture as set forth in the Rule 11 Plea Agreement.

                                          Respectfully submitted,

                                          Dawn N. Ison
                                          United States Attorney

                                          *s/Ryan A. Particka*
                                          Ryan A. Particka
                                          Assistant U.S. Attorney
                                          211 W. Fort Street, Suite 2001
                                          Detroit, MI 48226
                                          Phone: (313) 226-9635
                                          Ryan.particka@usdoj.gov

Dated: August 19, 2022

## Certificate of Service

I certify that on August 19, 2022, I caused this Sentencing Memorandum to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to the following attorney(s):

Steven E. Scharg
Attorney for Samuel Baker

*s/Ryan A. Particka*
Assistant U.S. Attorney